UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS AMPARAN RODRIGUEZ,<br><br>  Petitioner,<br><br>  v.<br><br>DAVE DAVEY,<br><br>  Respondent. | No. 2:12-cv-2260 TLN GGH P<br><br>FINDINGS AND RECOMMENDATIONS |

INTRODUCTION

  Petitioner's motion for stay and abeyance, under Rhines v. Weber, 544 U.S. 269, 273, 125 S. Ct. 1528, 161 L.Ed.2d (2005), came on regularly for hearing on October 2, 2014. Upon review of the documents in support and opposition, upon hearing the arguments of counsel, and good cause appearing therefor, the undersigned recommends that petitioner's motion be granted and that this matter be stayed pending petitioner's exhaustion of his ineffective assistance of counsel claims.

  Petitioner, a state prisoner proceeding with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C § 2254. Petitioner challenges his conviction for first degree murder for which he received a prison term of 25 years to life. Petitioner appealed the conviction which was denied on February 28, 2011. The Court of Appeal found, among other issues, that the

1

giving of an aider and abettor "equally guilty" instruction was error under the circumstances, but harmless error given the jury instructions as a whole. People v. Rodriguez, 2011 WL 684608, at *6 (February 28, 2011).

Subsequently, petitioner filed a petition for review with the California Supreme Court raising the following issues: (1) whether the error in instructing the jury that an aider and abettor is "equally guilty" as the actual perpetrator was harmless beyond a reasonable doubt; and (2) whether the evidence was insufficient to show petitioner had the specific intent to kill or deliberated or premeditated the killing. Resp't's Lod. Doc. No. 2, at 1-2. The Supreme Court denied that petition for review on June 8, 2011. Resp't's Lod. Doc. No. 3.

On August 22, 2012, petitioner filed his federal petition for writ of habeas corpus. ECF No. 1. Petitioner was subsequently appointed counsel, after which petitioner filed his first amended petition alleging the following claims: (1) petitioner's conviction of first-degree murder is not supported by sufficient evidence to show that he acted with premeditation and deliberation; (2) the trial court erred by instructing petitioner's jury that the degree of the crime committed by petitioner as an aider and abettor was a function of the degree of the crime committed by Madrigal (the perpetrator), and that Madrigal was guilty of premeditated murder; and (3) petitioner received ineffective assistance of counsel because trial counsel failed to object to the instructional errors related to petitioner's state of mind and appellate counsel failed to thoroughly explain those errors on appeal. ECF No. 37, at 5, 8, 16.

In conjunction with his first amended petition, the instant motion for stay and abeyance was filed in order to permit exhaustion of his claim for ineffective assistance of counsel. ECF No. 38. Respondent opposes the motion on the ground that petitioner's ineffective assistance of counsel claim is barred by the statute of limitations and, thus, petitioner's ineffective assistance of counsel claim is futile. For the reasons set forth below, the undersigned recommends that petitioner's motion be granted.

/ / /

/ / /

/ / /

DISCUSSION

A district court may properly stay a habeas petition and hold it in abeyance pursuant to Rhines. Under Rhines, a district court may stay a mixed petition to allow a petitioner to present an unexhausted claim to the state courts. 544 U.S. at 277. Assuming that the claims to be exhausted would be timely when first set forth in a federal petition, or assuming that they, being untimely when first set forth, relate back in some way to timely, otherwise exhausted, claims in the initially filed federal petition, such a stay "eliminates entirely any limitations issue with regard to the originally unexhausted claims, as the claims remain pending in federal court[.]" King v. Ryan, 564 F.3d 1133, 1140 (9th Cir. 2009). However, to qualify for a stay under Rhines, a petitioner must: (1) show good cause for his failure to exhaust all his claims before filing this action; (2) explain and demonstrate how his unexhausted claim is potentially meritorious; (3) describe the status of any pending state court proceedings on his unexhausted claim; and (4) explain how he has diligently pursued his unexhausted claim. 544 U.S. at 277–78. It appears to the undersigned that good cause will often overlap with the diligence factor.

The undersigned will first discuss the "potentially meritorious" factor and then the good cause/diligence factors.

"Potentially Meritorious"

To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687–88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 156 L.Ed.2d 471 (2003). "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689). Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

Petitioner asserts there were several layers of instructional error that denied petitioner his right to a jury trial on the *mens rea* element of first degree murder. Petitioner contends that failure to exhaust any one of these layers of error was the result of ineffective assistance of counsel, arguing that there was no sound reason or strategy for failing to raise these errors. Petitioner notes the following instructions were erroneous:

> (1) [T]he court's instruction of the jury pursuant to the prosecution's request for judicial notice at the end of its case that "it was not subject to dispute" that "Madrigal was indeed convicted of . . . first-degree, willful, deliberate, and premeditated murder."
>
> (2) [T]he court's instruction with former CALCRIM No. 400 that "[a] person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it."
>
> (3) [T]he court's instruction with a version of CALCRIM No. 521 modified by the prosecutor, which told jurors that Mr. Rodriguez's guilt of first degree murder was a function of whether they agreed that "the perpetrator [Madrigal] committed a willful, deliberate and premeditated murder" and that "the killing was first degree murder rather than a lesser crime";
>
> (4) [T]he court's instruction to the jurors—in response to their mid-deliberation question, "Why were we given a second choice of 2nd degree murder, since D.M. [David Madrigal] was convicted of 1st degree murder[?]"—that the State's burden in establishing Mr. Rodriguez's guilt of first-degree murder was proving that "the killing of Alexandra Cerda was first degree murder rather than second degree murder"; and
>
> (5) [T]he court's instruction to the jurors—in response to their final mid-deliberation question whether, after finding Mr. Rodriguez guilty of aiding and abetting murder, they still had the discretion to convict him of second-degree murder rather than first-degree murder—that, if they found the prosecution had proved that Mr. Rodriguez had "aided and abetted in the crime of murder, then the[y] must decide whether the murder was willful, deliberate, and premeditated (First Degree Murder), or Second Degree Murder."

///

///

4

ECF No. 37-1, at 104-05 (internal citations omitted).  According to petitioner, trial counsel did not specifically object to the first two instructions listed above.  As to his representation on appeal, petitioner asserts that appellate counsel only contested the court's instruction with regard to CALCRIM No. 400.

As to prejudice, petitioner argues as follows:

> Had the errors . . . been pointed out to the trial court at the time that order and those instructions were proposed, the trial court would not have made the instructional errors that are the subject of the petition's second claim for relief.  And, if these arguments had been raised in the trial court and rejected by that court, or even if they had not been raised by trial counsel, these points could have been raised in Mr. Rodriguez's state court appeal . . . and/or as claims of ineffective assistance of counsel by trial counsel. And had these arguments all been presented in Mr. Rodriguez's state court appeal, the Court of Appeal would have realized that prejudicial instructional error occurred, requiring reversal of Mr. Rodriguez's first-degree murder conviction, or modification of that conviction to one of second-degree murder.

ECF No. 37-1 at 103-04.

Petitioner also notes that appellate counsel failed to cite to favorable case law.  Id. at 107.  In particular, petitioner asserts that People v. Nero, 181 Cal. App. 4th 504, 514 (2010) and People v. Loza, 207 Cal. App. 4th 332 (2012).  In People v. Nero, the jury found the defendants, Nero and Brown who are brother and sister, guilty of second degree murder arising from the stabbing of the victim. 181 Cal. App. 4th at 509.  The stabbing was the result of an altercation between Nero and the victim after the victim had called Brown derogatory names.  Id. at 508.  During the fight, the victim pulled a knife which he eventually dropped.  Id.  Nero picked up the knife and stabbed the victim.  Id.  Throughout the altercation, Brown was telling them to stop.  Id. at 509.  The jury asked whether Brown, the aider and abettor, could be less culpable than Nero, the direct perpetrator.  Id. 509-10.  The trial court reread an instruction stating that the perpetrator and the aider and abettor are "equally guilty."  Id. at 509-10.  The Court of Appeal found that this instruction was prejudicial error.  Id. at 510.  In People v. Loza, the Court of Appeal found that the defendant's attorney rendered ineffective assistance in failing to seek a modification of the "equally guilty" language found in CALCRIM No. 400. 207 Cal. App. 4th at 351-52.

///

In this case, petitioner was found guilty of first-degree murder based on an aider and abettor theory. Rodriguez, 2011 WL 684608 at *1. Madrigal, petitioner's co-defendant who pled guilty to first degree murder prior to petitioner's trial, was the direct perpetrator. Id. at n.1. Petitioner drove Madrigal to pick the victim up. Id. When the victim refused to have sex with Madrigal, Madrigal stabbed the victim approximately 120 times. Id. Petitioner continued to drive. Id. As noted above, the trial court erroneously gave the jury the CALCRIM 400 instruction which contained the "equally guilty" language. Like the jury in Nero, the jury in petitioner's trial appeared confused by that jury instruction. Given the favorable case law that counsel failed to cite, petitioner has colorably, potentially demonstrated that counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that but for the performance rendered the result of the proceeding would have been different.[1] However, even potentially meritorious claims may be futile to exhaust if they are AEDPA untimely. If untimely on their face when first brought, the newly pleaded claims may be barred if the initial petition's claims are untimely, or because the claims to be exhausted do not relate back to timely brought claims.

Respondent primarily contends that petitioner does not meet the "potentially meritorious" prong of Rhines because petitioner asserted his ineffective assistance of counsel claim after the one-year statute of limitations contained in 28 U.S.C. § 2241(d) had run. The one-year statute of limitations for federal habeas corpus petitions begins to run from the date on which the judgment becomes final by the conclusion of direct review or expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1).

Petitioner's judgment became final on September 6, 2012, 90 days after the California Supreme Court denied petitioner's petition for review. See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) ("[W]hen a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires."); Resp't's Lod. Doc. 3. As such, the AEDPA

---

[1] The undersigned, of course, is making no final ruling on the merits of the ineffective assistance claim, or any other pending claim.

one-year limitations period began to run on September 7, 2012.  Petitioner timely filed his federal habeas petition on August 22, 2012, but did not raise his ineffective assistance of counsel claim until June 20, 2014, when he filed his first amended petition.  See ECF No. 1 at 4-5 and ECF No. 37 at 16.  As such, petitioner's ineffective assistance of counsel claim is barred by the statute of limitations, unless this claim relates back to petitioner's claims asserted in his original petition.  See Fed. R. Civ. P. 15(c); Mayle v. Felix, 545 U.S. 644 (2005); Nyugen v. Curry, 736 F.3d 1287, 1297 (9th Cir. 2013).

"A claim added to a timely filed habeas petition after the expiration of the statute of limitations is timely only if the new claim relates back to a properly filed claim contained in the original petition."  Nyugen, 736 F.3d at 1296.  "An amended petition does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading sets forth."  Mayle, 545 U.S. 650.  The Ninth Circuit has construed the "time and type" language as referring to the facts that support the grounds for relief as opposed to the claims.  Nyugen, 736 F.3d at 1297 ("All of Nyugen's asserted grounds for relief—cruel and unusual punishment, double jeopardy, and appellate-counsel IAC for failing to raise double jeopardy—are supported by a common core of facts.").

Petitioner clearly exhausted *some* claim of instructional error and thus, his ineffective assistance of counsel claims may relate back to a properly filed claim.

Petitioner's counsel argued all of the newly pled ineffective assistance claims relate in some way to the asserted "equally guilty" defective instruction.  However, some of the claims are more related than others.  IAC Claim 2, as set forth above, directly invokes the "equally guilty" instruction.  It is difficult to see how the IAC claim related to the "equally guilty" instruction does not relate back to the "straight" claim of instructional error on this topic.  The operative facts which made this instruction erroneous (the state of the evidence when jury instructions were decided) are primarily the same operative facts which apprise us of counsel's alleged deficiencies with respect to not contesting the instruction.

/ / /

/ / /

7

Citing Ireland v. Cash , 2013 U.S. Dist. LEXIS (E.D. Cal. 2013), respondent effectively asserts that ineffective assistance claims will *never* relate back because they will *always* relate in part to the circumstances facing counsel when counsel did not prepare properly, or appellate counsel did not press the issue—timing apart from the determination by the court to give the contested instruction.  This is true in a technical sense, but for practical purposes in assessing counsel's performance regarding jury instructions, the proximate circumstances surrounding the giving of the instruction in the first place are the most important.  For trial counsel, knowing that trial is a dynamic and fluid event, and that the wisdom of a certain instruction cannot be truly assessed until the facts at trial have been presented, the most important time to assess counsel's performance coincides with the determination by the court to give the "errant" instruction after the close of evidence.  Appellate counsel will also be referencing these same circumstances when assessing whether to raise the claim on appeal.

It is true that the other "layered" instructions at issue are less related to the "equally guilty" instruction, and that the other "layered" instructions were not contested as a straight jury instruction error either at trial or on appeal.  See especially ECF No. 37-1, at 104 (sub-claim number 1 relating to judicial notice).  However, the court need not assess the relation back of each IAC theory in that if a stay of the action is to be granted on even one theory, the action is still stayed.  It does respondent no harm for petitioner to exhaust all theories when the federal action is properly stayed on one.  If respondent desires to contest the timeliness of the sub-claims or theories after the case comes back to federal court, respondent is free to do so at that time.

Good Cause/ Diligence

What constitutes good cause has not been precisely defined except to indicate at the outer end that petitioner must not have engaged in purposeful dilatory tactics, Rhines, 544 U.S. at 277-78, and that "extraordinary circumstances" need not be found.  Jackson v. Roe, 425 F.3d 654, 661–62 (9th Cir. 2005); see also Rhines, 544 U.S. at 279 (Stevens, J., concurring) (the "good cause" requirement should not be read "to impose the sort of strict and inflexible requirement that would trap the unwary pro se prisoner") (internal citation omitted); id. (Souter, J., concurring) (*pro se* habeas petitioners do not come well trained to address tricky exhaustion determinations).

"But as the Jackson court recognized, we must interpret whether a petitioner has "good cause" for a failure to exhaust in light of the Supreme Court's instruction in Rhines that the district court should only stay mixed petitions in 'limited circumstances.' We also must be mindful that AEDPA aims to encourage the finality of sentences and to encourage petitioners to exhaust their claims in state court before filing in federal court." Wooten v. Kirkland, 540 F.3d 1019, 1023-24 (9th Cir. 2008) (quoting Jackson, 425 F.3d at 661) (internal citations omitted).

Recently, the Ninth Circuit stated that "a reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust," will demonstrate good cause under Rhines. Blake v. Baker, 745 F.3d 977, 982 (9th Cir. 2014). In Blake, the Ninth Circuit held that ineffective assistance of counsel by post-conviction counsel can be good cause for a Rhines stay. Id. at 983. Moreover, "good cause under Rhines, when based on IAC, cannot be any more demanding than a showing of cause under Martinez [v. Ryan, ---U.S. ---, 132 S. Ct. 1309, 182 L.Ed.2d 272 (2012)] to excuse state procedural default." Id. at 983-84. In Martinez, the Supreme Court held that "a prisoner may establish cause for a default of an ineffective assistance claim" where his post-conviction counsel "was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)[.]" See also Coleman v. Thompson, 501 U.S. 722, 755, 111 S. Ct. 2536, 115 L.Ed.2d 640 (1991) ("We reiterate that counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation.").

The Blake court concluded that petitioner satisfied the good cause standard where he argued that his post-conviction counsel "failed to conduct any independent investigation or retain experts in order to discover the facts underlying his trial-counsel IAC claim; namely, evidence that Blake was" subject to severe abuse as a child and suffered from brain damage and psychological disorders. 745 F.3d at 982 (internal quotes omitted). The petitioner supported this argument with extensive evidence, including psychological evaluation reports, a declaration by the private investigator who worked briefly for his post-conviction attorney, and thirteen declarations from petitioner's family and friends describing his "abhorrent" childhood conditions. Id. at 982-83. The Blake court concluded that the petitioner had met the Coleman/Martinez

///

standard for good cause, "leav[ing] for another day whether some lesser showing will suffice to show good cause under Rhines." Id. at 983-84 & n. 7.

The undersigned finds that petitioner has demonstrated good cause under the standards of Rhines and Strickland based on ineffective assistance of counsel at the trial and appellate level. The undersigned also finds that petitioner has been diligent in pursuing his unexhausted claims. As petitioner's counsel notes, petitioner does not speak or read English. He is certainly not aware of the ins and outs of the practice of criminal defense. The undersigned does not interpret the diligence required for a Rhines stay as demanding that petitioner know the legal nuances and strategic reasons for bringing an ineffective assistance of counsel claim based on erroneous jury instructions in addition to a straight claim for erroneous jury instruction. See Jackson, 425 F.3d 661-62 (extraordinary circumstances not required for Rhines stay).[2] It is enough that the undersigned finds petitioner did not engage in purposeful dilatory tactics.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's motion for stay and abeyance (ECF No.38) be granted; and
2. Petitioner be directed to inform the court within thirty days of any decision by the state Supreme Court.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

---

[2] As discussed at hearing, there is a potential, important difference between raising a "straight" jury instruction claim and an ineffective assistance claim related to it. The ineffective assistance claim may well have a less onerous underlying standard of review than a straight claim in this habeas proceeding, and may be based upon errors in state law as a straight jury instruction claim never could. To expect a lay petitioner to know these nuances at the risk of appearing non-diligent is to expect the practically impossible. Rather, for Rhines purposes, diligence should be assessed for this type of legally nuanced ineffective assistance claim at the time federal counsel is appointed or when petitioner was otherwise apprised of the nuances when proceeding *pro se*. The undersigned understands that for other purposes, *e.g.*, whether it is equitably improper to apply the AEDPA statute of limitations, ignorance of the law *per se* will not suffice.

10

be served and filed within fourteen days after services of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 10, 2014

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

rodr2260.sta