1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LUIS AMPARAN RODRIGUEZ,               No.  2:12-cv-2260 TLN GGH P

12                  Petitioner,

13        v.                               FINDINGS AND RECOMMENDATIONS

14   DAVE DAVEY,

15                  Respondent.

16

17   INTRODUCTION AND BACKGROUND

18        Petitioner is a state prisoner proceeding with counsel on a petition for a writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254.  Respondent's motion to dismiss, filed April 29, 2015 is

20   presently under submission, the September 3, 2015 hearing having been vacated.[1]  Upon review

21   of the documents in support and opposition, upon hearing the arguments of counsel, and good

22   cause appearing therefor, the undersigned recommends that, with one exception, respondent's

23   motion be denied.

24        On August 22, 2012, petitioner filed his pro se federal petition for writ of habeas corpus.

25   ECF No. 1.  It contained the following claims: (1) insufficient evidence of specific intent to kill to

26   support murder conviction; (2) insufficient evidence of deliberation to support first degree

27

28   _____
     [1]  After review of the briefing, the court determined that a hearing was unnecessary.

                                    1

1    murder; (3) trial court error in instructing jury that an aider and abettor is "equally guilty" as the

2    actual perpetrator; and (4) trial court error in failing to instruct the jury on the lesser included

3    offense of voluntary manslaughter.  Id. at 4-5. Petitioner was subsequently appointed counsel,

4    after which petitioner filed his first amended petition alleging the following claims: (1)

5    petitioner's conviction of first-degree murder is not supported by sufficient evidence to show that

6    he acted with premeditation and deliberation; (2) the trial court erred by instructing petitioner's

7    jury that the degree of the crime committed by petitioner as an aider and abettor was a function of

8    the degree of the crime committed by Madrigal (the perpetrator), and that Madrigal was guilty of

9    premeditated murder;[2] and (3) petitioner  received ineffective assistance of counsel because trial

10   counsel failed to object to the instructional errors related to petitioner's state of mind and

11   appellate counsel failed to thoroughly explain those errors on appeal.  ECF No. 37.

12          In conjunction with his first amended petition, a motion for stay and abeyance pursuant to

13   Rhines v. Weber, 544 U.S. 269, (2005) was filed in order to permit exhaustion of Claim Three for

14   ineffective assistance of counsel.  ECF No. 38.  The undersigned recommended that petitioner's

15   motion be granted, and this recommendation was adopted by the district court.  ECF Nos. 44, 45.

16   On December 11, 2014, petitioner notified the court that the California Supreme Court had ruled

17   upon the exhaustion petition and that all claims were now exhausted.  ECF No. 46.  Accordingly,

18   the stay was lifted on December 18, 2014.  ECF No. 47.  Respondent filed a motion to dismiss on

19   April 29, 2015, seeking to dismiss the newly exhausted claims as time-barred and because they do

20   not relate back to the original petition.  ECF No. 56.

21   DISCUSSION

22          Respondent moves to dismiss not only Claim Three as having been filed outside the one

23   year AEDPA statute of limitations period, but also to dismiss the new grounds of instructional

24   error that were added to Claim Two.  Petitioner asserts there were several layers of instructional

25   error that denied petitioner his right to a jury trial on the *mens rea* element of first degree murder.

26   He contends that failure to exhaust any one of these layers of error was the result of ineffective

27

28   _____

     [2]  This claim contains the instructiuon sub-claims discussed at length herein.

assistance of [prior] counsel, arguing that there was no sound reason or strategy for failing to raise

these errors.  Petitioner notes the following instructions were erroneous:

> (1) [T]he court's instruction of the jury pursuant to the prosecution's request for judicial notice at the end of its case that "it was not subject to dispute" that "Madrigal was indeed convicted of . . . first-degree, willful, deliberate, and premeditated murder."

> (2) [T]he court's instruction with former CALCRIM No. 400 that "[a] person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it."

> (3) [T]he court's instruction with a version of CALCRIM No. 521 modified by the prosecutor, which told jurors that Mr. Rodriguez's guilt of first degree murder was a function of whether they agreed that "the perpetrator [Madrigal] committed a willful, deliberate and premeditated murder" and that "the killing was first degree murder rather than a lesser crime."

> (4) [T]he court's instruction to the jurors—in response to their mid-deliberation question, "Why were we given a second choice of 2nd degree murder, since D.M. [David Madrigal] was convicted of 1st degree murder[?]"—that the State's burden in establishing Mr. Rodriguez's guilt of first-degree murder was proving that "the killing of Alexandra Cerda was first degree murder rather than second degree murder."

> (5) [T]he court's instruction to the jurors—in response to their final mid-deliberation question whether, after finding Mr. Rodriguez guilty of aiding and abetting murder, they still had the discretion to convict him of second-degree murder rather than first-degree murder—that, if they found the prosecution had proved that Mr. Rodriguez had "aided and abetted in the crime of murder, then the[y] must decide whether the murder was willful, deliberate, and premeditated (First Degree Murder), or Second Degree Murder."

ECF Nos. 37-1 at 116-17, 61 at 19-20 (internal citations omitted).  According to petitioner, trial

counsel did not specifically object to the first two instructions listed above.  As to his

representation on appeal, petitioner asserts that appellate counsel only contested the court's

instruction with regard to CALCRIM No. 400.

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. §

2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

3

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Under 28 U.S.C. § 2244(d)(2):

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In 2009, petitioner was convicted of first degree murder for which he received a prison term of 25 years to life.  Petitioner appealed the conviction which was denied by the California Court of Appeal on February 28, 2011.  Subsequently, petitioner filed a petition for review with the California Supreme Court, which was denied on June 8, 2011.  Resp't's Lod. Doc. 3.

As respondent argues, following the denial of the petition for review on direct appeal on June 8, 2011, petitioner's conviction became final ninety days later, on September 6, 2011.  ECF Nos. 56 at 7, 37-3 at 2; Res't's Lod. Doc. 3; Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) ("holding] that the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the [ninety-day] period within which a petitioner can file a petition for a writ of certiorari with the United States Supreme Court, whether or not the petitioner actually files such a petition.").  The statute of limitations began to run the day after the date of final conviction, on September 7, 2011.  ECF No. 56 at 7; Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).  Thus, petitioner had until September 6, 2012 to file the instant petition, absent any applicable time for tolling.

Petitioner did file his original petition in this court timely on August 22, 2012.  ECF No. 1.  However, the amended petition, filed June 20, 2014, is untimely unless the claims therein were

4

1    previously, expressly brought in the timely petition, or the "new" claims relate back to those

2    claims expressly and timely brought.  Although this court granted the motion for stay and

3    abeyance, it did not decide whether the unexhausted claim three for ineffective assistance of

4    counsel and some of the instructional errors raised in claim two would relate back to the original

5    petition.  This court granted the stay under <u>Rhines</u>, explaining that assuming the new claims

6    would be timely or otherwise relate back to timely claims, petitioner had met the good cause,

7    potentially meritorious, and diligence requirements of <u>Rhines</u>.

8           Petitioner has now exhausted these previously unexhausted claims.

9           A state court habeas petition filed beyond the expiration of AEDPA's statute of limitations

10   does not toll the limitation period under § 2244(d)(2).  <u>See</u> <u>Ferguson v. Palmateer</u>, 321 F.3d 820,

11   823 (9th Cir. 2003); <u>Jiminez v. Rice</u>, 276 F.3d 478, 482 (9th Cir. 2001).  Moreover, the filing of

12   the original federal habeas petition did not toll the AEDPA statute of limitations as to then as yet

13   unclaimed and unexhausted claim three and some of the instructional errors raised in claim two of

14   the amended petition, thus the statute of limitations as to those claims expired on September 6,

15   2012.  <u>Duncan v. Walker</u>, 533 U.S. 167, 121 S. Ct. 2120 (2002).  As noted, the amended petition

16   which introduced those claims was not filed until June 20, 2014, over a year and nine months

17   beyond the expiration of the statute.

18          Thus, claim three and the instructional errors in claim two can only be deemed timely if

19   they relate back to claim three (instructional error) of the original petition.  Respondent contends

20   that some of the current instructional errors in claim two, and claim three do not relate back to the

21   timely filed claim three of the original petition, while petitioner maintains that the claims of

22   instructional error in claim two as well as the ineffective assistance claim three both relate back to

23   original claim three, the instructional error claim.

24          Rule 15(c) of the Federal Rules of Civil Procedure states, in relevant part, that relation

25   back of an amendment "to the date of an original pleading" occurs when "the amendment asserts

26   a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted

27   to be set out – in the original pleading... ."  Fed. R. Civ. P. 15(c)(1)(B).  "So long as the original

28   and amended petitions state claims that are tied to a common core of operative facts, relation back

1  will be in order." Mayle v. Felix, 545 U.S. 644, 664, 125 S. Ct. 2562, 2574 (2005). However,

2  "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year

3  time limit) when it asserts a new ground for relief supported by facts that differ in both time and

4  type from those the original pleading set forth." Id. at 650. 125 S. Ct. at 2566; Hebner v.

5  McGrath, 543 F.3d 1133, 1134 (9th Cir. 2008) (when the limitations period has run "a new claim

6  in an amended petition relates back to avoid a limitations bar...only when it arises from the same

7  core of operative facts as a claim contained in the original petition. It is not enough that the new

8  argument pertains to the same trial, conviction, or sentence."). The Ninth Circuit has construed

9  the "time and type" language as referring to the *facts* that support the grounds for relief as

10 opposed to the actual claims or grounds for relief themselves. Nguyen v. Curry, 736 F.3d 1287,

11 1297 (9th Cir. 2013) ("All of Nguyen's asserted grounds for relief—cruel and unusual

12 punishment, double jeopardy, and appellate-counsel IAC for failing to raise double jeopardy—are

13 supported by a common core of facts."). See also Mayle, 545 U.S. at 658 n. 5 (approving of

14 relation back where new legal theory is tied to same operative facts as those originally alleged).

15       The parties repeat many of their arguments as raised in the motion for stay and abeyance

16 and opposition to that motion which were previously considered by the court in its decision to

17 grant the motion. Discussing the relation back issue, this court stated only that the "ineffective

18 assistance of counsel claims *may* relate back to a properly filed claim." ECF No. 44 at 7.

19 (emphasis added.) It expressly declined to provide a ruling on the matter. The substance of the

20 court's discussion on the relation back issue was as follows:

21            Petitioner's counsel argued all of the newly pled ineffective
              assistance claims relate in some way to the asserted "equally guilty"
22            defective instruction. However, some of the claims are more
              related than others. IAC Claim 2, as set forth above, directly
23            invokes the "equally guilty" instruction. It is difficult to see how
              the IAC claim related to the "equally guilty" instruction does not
24            relate back to the "straight" claim of instructional error on this
              topic. The operative facts which made this instruction erroneous
25            (the state of the evidence when jury instructions were decided) are
              primarily the same operative facts which apprise us of counsel's
26            alleged deficiencies with respect to not contesting the instruction.

27            Citing Ireland v. Cash , 2013 U.S. Dist. LEXIS (E.D. Cal. 2013),
              respondent effectively asserts that ineffective assistance claims will
28            *never* relate back because they will *always* relate in part to the

6

circumstances facing counsel when counsel did not prepare properly, or appellate counsel did not press the issue—timing apart from the determination by the court to give the contested instruction. This is true in a technical sense, but for practical purposes in assessing counsel's performance regarding jury instructions, the proximate circumstances surrounding the giving of the instruction in the first place are the most important. For trial counsel, knowing that trial is a dynamic and fluid event, and that the wisdom of a certain instruction cannot be truly assessed until the facts at trial have been presented, the most important time to assess counsel's performance coincides with the determination by the court to give the "errant" instruction after the close of evidence. Appellate counsel will also be referencing these same circumstances when assessing whether to raise the claim on appeal.

It is true that the other "layered" instructions at issue are less related to the "equally guilty" instruction, and that the other "layered" instructions were not contested as a straight jury instruction error either at trial or on appeal. See especially ECF No. 37-1, at 104 (sub-claim number 1 relating to judicial notice). However, the court need not assess the relation back of each IAC theory in that if a stay of the action is to be granted on even one theory, the action is still stayed. It does respondent no harm for petitioner to exhaust all theories when the federal action is properly stayed on one. If respondent desires to contest the timeliness of the sub-claims or theories after the case comes back to federal court, respondent is free to do so at that time.

ECF No. 44 at 7-8.

It is respondent's position in his motion to dismiss that claim three (IAC) does not relate back to claim three of the original petition because original claim three referred to "equally guilty" language which concerns CALCRIM No. 400 only, and no other instructions. ECF No. 56 at 14. Respondent asserts that the IAC claim involves different constitutional violations from the instructional error claim (Sixth Amendment as compared to Fifth and Fourteenth Amendments), that the claims involved different actors (attorney versus trial court), and different aspects of the criminal process (IAC claim concerns not only CALCRIM No. 400 but counsel's alleged failure to object to the trial court's decision to take judicial notice of the co-defendant's murder conviction, trial court's responses to two jury questions, and defense counsel's failure to request CALCRIM No. 373, as compared to the original claim concerning the court's instruction to the jury at the close of evidence). Respondent contends that the fact that some new allegations concern the mens rea of aider and abettor liability in murder cases is not enough to find a common core of operative facts with the original instructional error claim. Respondent further

1  argues that the claim of ineffectiveness of appellate counsel for failing to raise issues on direct

2  appeal cannot relate back as permitting such a claim would completely eviscerate <u>Mayle</u> by

3  permitting relation back of any and every claim that a petitioner may later decide to raise.

4  Respondent also asserts that the supplemental instruction error allegations do not relate back for

5  the same reasons.

6   Petitioner maintains that all of the instructional error claims relate to the mens rea required

7  for aiding and abetting in order to be guilty of premeditated murder, and therefore they relate

8  back to the original claim of trial court error in instructing that an aider and abettor is "equally

9  guilty."  According to petitioner, the issue is one and the same:  "did the trial court violate Mr.

10  Rodriguez's constitutional right to a jury trial on the question of whether, in aiding and abetting

11  murder, he personally acted with premeditation and deliberation?"  Petitioner argues that both the

12  original and the amended claims are tied to a common core of operative facts.  The ineffective

13  assistance claim also relates back, petitioner claims, because it shares the same core of operative

14  facts and same predicate, the erroneous instruction to the jury regarding the mens rea required for

15  an aider and abettor to be guilty of premeditated murder.

16   I. <u>Instructional Error Claim</u>

17   The amended petition raises additional allegations of instructional error in claim two, as

18  outlined *supra*.  The only allegation which is not new and therefore no relation back analysis is

19  required, is the second allegation, that the trial court effectively directed a verdict on

20  premeditation by instructing the jury with the then current version of CALCRIM 400, that

21  petitioner is equally guilty of the crime if he aided and abetted the perpetrator who did commit the

22  crime.  This is the original claim against which the new allegations must be measured to

23  determine whether they share a "common core of operative facts."[3]

24

25  [3]  Respondent makes no argument why petitioner's instructional error claims concerning
26  CALCRIM Nos. 521 and 400 should not relate back to the original claim three concerning the
   "equally guilty" language.  In fact, respondent concedes that the instructional error claim
27  concerning the use of the phrase "equally guilty" pertained to the use of CALCRIM No. 400.
   ECF No. 56 at 14.  Therefore, it will be assumed that respondent concedes these instructions are
28  part and parcel of the facts raised in the original petition.

California law on aiding and abetting was set forth by the Court of Appeals in its opinion on direct appeal.

> "(1) A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.)

Res't's Lod. Doc. 1 at 8.

As further elaboration, the undersigned adds:

> "All persons concerned in the commission of a crime, ... whether they directly commit the act constituting the offense, or aid and abet in its commission, ... are principals in any crime so committed." (Pen. Code, § 31; see *People v. Mendoza* (1998) 18 Cal.4th 1114, 1122-1123 [77 Cal.Rptr.2d 428, 959 P.2d 735]; *People v. Prettyman* (1996) 14 Cal.4th 248, 259-260 [58 Cal.Rptr.2d 827, 926 P.2d 1013].) Thus, a person who aids and abets a crime is guilty of that crime even if someone else committed some or all of the criminal acts. (*Ibid.*) Because aiders and abettors may be criminally liable for acts not their own, cases have described their liability as "vicarious." (E.g., *People v. Croy* (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392].) This description is accurate as far as it goes. But, as we explain, the aider and abettor's guilt for the intended crime is not entirely vicarious. Rather, that guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's own acts and own mental state.
>
> It is important to bear in mind that an aider and abettor's liability for criminal conduct is of two kinds. First, an aider and abettor with the necessary mental state is guilty of the intended crime. Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also "for any other offense that was a 'natural and probable consequence' of the crime aided and abetted." (*People v. Prettyman*, supra, 14 Cal.4th at p. 260.)
>
> …
>
> [O]utside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator. "To prove that a defendant is an accomplice ... the prosecution must show that the defendant acted 'with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' ([*People v. Beeman* (1984) 35 Cal.3d 547,] 560 [199 Cal.Rptr. 60, 674 P.2d 1318], italics in original.) When the offense charged is a specific intent crime, the accomplice must 'share the specific intent of the perpetrator'; this occurs when the accomplice 'knows the full extent of the

1
2
3
4
5

> perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime.' (Ibid.)" (*People v. Prettyman*, supra, 14 Cal.4th at p. 259.)1 What this means here, when the charged offense and the intended offense-murder or attempted murder-are the same, i.e., when guilt does not depend on the natural and probable consequences doctrine, is that the aider and abettor must know and share the murderous intent of the actual perpetrator.

6   People v. McCoy, 25 Cal.4th 1111, 1116-1117 (2001).  In the underlying case, petitioner was

7   prosecuted under the first theory; he was not prosecuted under the natural and probable

8   consequences doctrine.  Res't's Lod. Doc. 1 at 16.

9              A.  Judicial Notice Allegation

10         The first sub-claim of Claim 2 is that the court, pursuant to the prosecution's request, took

11  judicial notice of petitioner's co-defendant's first degree murder conviction, without objection by

12  the defense, because "it was not subject to dispute."  Respondent contends that not only is the

13  issue of taking judicial notice completely different from the court's duty to properly instruct the

14  jury, it took place at a different time in the proceedings from the jury instruction conference.

15  Therefore, respondent argues, it differed in time and type from the original instructional error

16  claim and should have been raised as a separate ground for relief.[4]

17         Petitioner presents an overarching argument that all of the allegations relate directly to the

18  "equally guilty" instruction because they concern instructions to the jury regarding the mens rea

19  an aider and abettor must possess in order to be guilty of premeditated murder.  Petitioner also

20  focuses on the equities of the situation, including petitioner's incarceration, lack of counsel, lack

21  of education, lack of English speaking skills, and no lack of adequate notice to respondent, in

22  arguing that the claim in the original petition should not be so narrowly construed as respondent

23  suggests.

24         With respect to the judicial notice instruction in particular, petitioner asserts that the

25  prejudice of the "equally guilty" instruction was compounded by the jury's knowledge that co-

26

27

28

---

[4]  Respondent states only that the judicial notice instruction was given at the end of the prosecution's case.  ECF No. 61 at 19.  Although respondent states that the judicial notice issue was raised at a different time in the proceedings than the jury instruction conference, respondent does not elaborate and has not lodged the trial transcript with the court.

1    defendant Madrigal had pled guilty to premeditated first degree murder.  Petitioner explains that

2    "the Court of Appeal expressly acknowledged in its opinion that Mr. Rodriguez's claim of

3    instructional error was 'well taken,' because the 'equally guilty' phrase in former CALCRIM No.

4    400 'erroneously failed to note, for example, that defendant could have been convicted of second

5    degree murder *even though Madrigal pled guilty to first degree murder.*'"   ECF No. 61 at 27

6    (citations omitted.)  Petitioner contends that because both appellate counsel's argument and the

7    Court of Appeal's opinion were predicated on the fact that the jury was informed of Madrigal's

8    plea, the judicial notice allegation is not a "new" fact because it was raised and discussed at the

9    state court appellate level.  Even if the "judicial notice" fact were to be construed as "new,"

10   petitioner argues that it is transactionally related to the "equally guilty" instructions because when

11   considered in combination with the jury's questions and the court's responses, the judicial notice

12   instruction illustrates the prejudice to petitioner as a result of the court's misinstruction on how to

13   determine petitioner's mens rea.  In fact, the judicial notice instruction, without the other

14   instructional errors on aiding and abetting and the equally guilty language, would not be

15   independently actionable, according to petitioner.  By itself, this instruction was superfluous as it

16   was clear that Madrigal was guilty of premeditated murder, and it was only relevant where a jury

17   was erroneously instructed, as here, that petitioner's mens rea was vicarious of Madrigal's.  There

18   is otherwise no reason to raise an objection to this instruction as a separate ground for relief.

19          Together with the erroneous instructions CALCRIM 400 and 521, and the juror's

20   questions, petitioner argues it was clear that the jury had no ability to convict petitioner of second

21   degree murder, and these errors together show the prejudicial impact of the "equally guilty"

22   instructions.  Lastly, petitioner argues that here the government did not dispute that instructional

23   error occurred, but only that it was harmless, and for this reason it would be fundamentally unfair

24   to carve any of these prejudice illustrating facts out of the amended petition.

25          The undersigned has some difficulty in assessing that this judicial notice sub-claim is

26   actually an independent ground for relief as opposed to a factual occurrence at trial which sets the

27   stage for the prejudice arguments for the allegedly errant jury instructions given.  Nevertheless, at

28   this stage, the purpose of this Findings and Recommendations is to adjudicate only the relation-

back issue.  For this purpose, the undersigned will assume for the moment, that the judicial notice sub-claim is a viable claim.

The gist of the judicial notice sub-claim has to be, however, that the court erred, from a constitutional standpoint, in permitting judicial notice of the fact of Madrigal's conviction when it did so.  This error(s) factual consequence will have little to do with the wording of the jury instructions, e.g., was the fact not a viable subject for judicial notice; did it violate the Confrontation Clause?  When viewed in this context, the undersigned agrees with respondent that the error, however petitioner desires to phrase it, is of a different time and type than the claims directly related to the jury instructions themselves.  That is, even as petitioner appears to concede, the judicial notice itself may have been entirely proper; it was only the circumstances of the later framed jury instructions which call into play the now, assertedly prejudicial fact of judicial notice.

The fact that the judicial notice sub-claim should be barred under the relation back doctrine does *not* mean that the fact of judicial notice of Madrigal's first degree murder conviction cannot be argued for its "prejudice" value when assessing the propriety of the instructions themselves, i.e., the other sub-claims.  It most assuredly can be so argued as prejudice is assessed from a totality of the circumstances standpoint.  This recommendation only means that "judicial notice" as a sub-claim *per se* should not be permitted as a timely claim.

### B.  Instructions in Response to Juror's Questions

The jury asked two questions regarding mens rea during deliberation to which the court responded with special instructions, which petitioner argues should relate back to the claim concerning the "equally guilty" instruction.  The first question was, "Why were we given a second choice of 2nd degree murder, since D.M. [David Madrigal] was convicted of 1st degree murder."  ECF No. 61 at 20, 31.  The court responded with Special Instruction 3 "that the State's burden in establishing Mr. Rodriguez's guilt of first-degree murder was proving that 'the killing of Alexandra Cerda was first degree murder rather than second degree murder.'"  Id.  The jury's second question raised by petitioner was "whether, after finding Mr. Rodriguez guilty of aiding and abetting murder, they still had the discretion to convict him of second-degree murder rather than first-degree murder…"  ECF No. 61 at 14, 32.  The court gave Special Instruction 5 in

1   response that "if they found that the prosecution had proved that Mr. Rodriguez had 'aided and

2   abetted the crime of murder, then the[y] must decide whether the murder was willful, deliberate,

3   and premeditated (First degree Murder), or Second Degree Murder.'" Id.

4          Respondent concedes that these special instructions are most similar factually to the

5   CALCRIM No. 400 instructional error claim; however, they should have been raised as separate

6   instructional error claims because the court did not use the "equally guilty" language in either

7   special instruction, and these instructions were given at different times from the original set of

8   instructions, thereby differing in type and time.

9          Petitioner counters that the jurors' questions and the court's special instructions all

10  pertained directly to the erroneous mens rea instruction CALCRIM No. 400 and the improperly

11  modified version of CALCRIM No. 521, an instruction which directed the jury that petitioner's

12  mens rea for first degree murder was a function of the mens rea of the perpetrator.[5]  The court's

13  special instructions to the jury in response to their questions expressly referred them back to

14  CALCRIM No. 521, which petitioner argues was based on the "congeriesof facts" raised in the

15  original petition.  Petitioner contends that the special instructions not only relate back to the

16  erroneous instructions that prompted the jury's questions because they involved the same type of

17  error, but they involve the same exact error, repeated.  According to petitioner, all of these

18  instructions direct the jury to consider not petitioner's own premeditation and deliberation, but the

19  perpetrator's mens rea.

20

21  _____

    [5]  The Court of Appeals summarized CALCRIM No. 521 as follows:
22

23          Defendant's jury also received CALCRIM No. 521, with which the
            trial court explained that "defendant has been prosecuted for first
24          degree murder under the theory that he aided and abetted a willful,
            deliberate and premeditated murder."   CALCRIM No. 521 then
25          gave the jury a definition of the mental state required for first
            degree murder before concluding:  "All other murders are of the
26          second degree.  [¶]  The People have the burden of proving beyond
            a reasonable doubt that the killing was first degree murder rather
27          than a lesser crime.  If the People have not met this burden, you
            must find the defendant not guilty of first degree murder."
28  Res't's Lod. Doc. 1 at 17.

1    In regard to timing of alleged errors, petitioner argues that the trial court's charges to the

2    jury on the mens rea for aiding and abetting a premeditated murder took place over a three day

3    period, which was an extended period due to the jurors' repeated questions based on their

4    confusion over the erroneous instructions and their attempt to understand them.  Petitioner asserts

5    that the jurors' questions and special instructions in response serve to show the extent of prejudice

6    to petitioner on this claim, since the court could have corrected its original errors with other

7    supplemental instructions, but instead solidified and perpetuated the prejudice caused by the

8    original instructions.

9    Although respondent has not lodged the transcripts from the trial, based on the parties'

10   briefing and the state court filings which were lodged, it appears that the jurors' questions arose

11   out of the language in CALCRIM Nos. 400 and 521 which created confusion as to what kind of

12   verdict the jury could return in light of being bound by the "equally guilty" language of one

13   instruction and the mens rea required for an aider and abettor in the other instruction, both based

14   on the mens rea of petitioner's co-defendant.  Their questions would not have surfaced if it were

15   not for the language of these instructions.

16   Unlike respondent's citation to Mayle for the proposition that one claim arose from a

17   pretrial event while another claim arose from the trial and therefore they were separated in time,

18   545 U.S. at 657, here the events all stemmed from a set of instructions regarding the mens rea

19   required for petitioner as an aider and abettor of the co-defendant and perpetrator whose mens rea

20   had already been established by his guilty plea.  Although the instructions at issue may have been

21   separated by other instructions, they related back to the previous instructions based on the jury's

22   questions which forced the special instructions to be given to explain the previous instructions.

23   Also unlike in Mayle, the issues here all pertain to the same type of error, instructional, (except

24   for the IAC claim discussed *infra*), and do not raise distinct claims such as those raised in Mayle,

25   a Confrontation Clause claim regarding admission of videotaped witness testimony, and a later

26   raised Fifth Amendment challenge to admission of defendant's own pretrial statements, both of

27   which seemed to have nothing in common in the way of the legal theory posed or the occurrence

28   or event at issue.  Mayle, 545 U.S. at 661.

14

Respondent cites to various cases wherein the courts refused to relate back claims, some of which are more properly discussed under the IAC claim *infra*. [6]  One case, however, involved original claims of trial court failure to adequately inquire into petitioner's understanding of the plea agreement's waiver provision and ineffective assistance of counsel for failing to investigate misstatements in the indictment.  The amended petition attempted to relate back the new claim of ineffective assistance for failing to explain the waiver provision and failing to adequately advise petitioner to appeal one of his convictions.  United States v. Ciampi, 419 F.3d 20, 22, 24 (1st Cir. 2005.  The court explained that although both claims "generally related to [petitioner's] 'understanding' of his appellate waiver," these claims focused on different aspects and actors, and the new IAC claim was based on different facts and occurrences.  Id. at 24.

Here, unlike in Ciampi, the claim regarding special instructions relates back because it is the same type as the original claim.  It pertains to alleged error by the same actor, the trial court, and the same sequence of occurrences, the jury instructions.  Moreover, it pertains to the same subject matter and contains the same core of operative facts, the court's instructions concerning the mens rea required for petitioner as aider and abettor in light of his co-defendant's plea of guilty to first degree premeditated murder.

Hebner v. McGrath, 543 F.3d 1133 (9th Cir. 2008) is also distinguishable in that although the claim sought to be related also concerned a due process violation, it pertained to jury instructions by the court which petitioner claimed permitted a conviction based on a lower standard of proof than beyond a reasonable doubt.  The original claim was for a due process violation in regard to the court's admission of certain testimony at trial.  Unlike the instant action, both claims were separated by time, occurring at different points in the trial, the witness testimony during the government's case, and the instructions after the close of evidence.  The claims were also very different in type.  The objected to testimony was that of a witness who

---

[6]  Respondent makes arguments concerning CALCRIM No. 373 and People v. Nero, a case of which petitioner claims appellate counsel should have informed the court.  These items are not included in petitioner's attempt to relate back instructional error claims, and will be discussed, to the extent applicable, in the section concerning petitioner's ineffective assistance of counsel claim.

1   testified to being a victim of a previous sexual offense by defendant, admitted as propensity

2   evidence.  The new claim alleged that jury instructions lowered the standard of proof required to

3   convict.  Each claim was based on a different set of facts and events, unlike the jury instructions

4   here, which all pertained to petitioner's mental state as aider and abettor and the significance of

5   his co-defendant's plea in that regard.

6          Furthermore, all of the facts and occurrences presented in the new claims were apparently

7   considered by the state court of appeal.[7]  Although not raised as a separate claim, the instruction

8   taking judicial notice of co-defendant Madrigal's plea was clearly addressed by petitioner's

9   counsel on appeal.  He had argued that the "equally guilty" language was compounded by the

10  jury's knowledge that Madrigal had already pled guilty to premeditated first degree murder.  ECF

11  No. 61 at 27, citing state court AOB at 35.  The court of appeal acknowledged this argument as

12  error.  Id., citing ECF 37-2 at 15 (Court of Appeal opinion).

13         The special instructions in response to jurors' questions were not specifically raised in the

14  state court of appeal, as conceded by petitioner.  ECF No. 61 at 18-19.  Nevertheless, the

15  instructions given in response to the jurors' questions expressly referred back to the instructions

16  which *were* the subject of the appeal and repeated the allegedly erroneous language.

17  Furthermore, the court of appeals did specifically state that it had considered whether other

18  instructions given to the jury on the aider and abettor criminal liability cured the error found in

19  CALCRIM No. 400.  The court stated, "[I]n determining whether error has been committed in

20  giving or not giving jury instructions, we must consider the instructions as a whole…."  ECF No.

21  37-2 at 15.  Appellate counsel had also argued to that court that the instructions as a whole should

22  be considered.  ECF No. 61 at 30-31.  Therefore, respondent had notice of them.  See Anthony v.

23  Cambra, 236 F.3d 568, 576 (9th Cir. 2000).

24         II.  Ineffective Assistance of Counsel

25         Petitioner raises for the first time as claim three in his amended petition ineffective

26  _____

27  [7]  Respondent has not lodged the entire state court record, but has lodged only the California
    Court of Appeal's opinion as well as the Petition for Review.  Therefore the court is unable to
    independently verify what facts and claims were raised in the state courts. Petitioner, however,
28  has cited to portions of the record in his opposition.

1    assistance of trial and appellate counsel, respectively, in failing to object to the instructional

2    errors related to petitioner's state of mind, and failing to thoroughly explain those errors on

3    appeal.  ECF No. 37 at 16.  The original petition did not contain an ineffective assistance of

4    counsel claim.

5         Respondent argues that this claim should not relate back because it is completely different

6    in type and time from the instructional error claim in the original petition.  Citing <u>Schneider v.</u>

7    <u>McDaniel</u>, 674 F.3d 1144, 1151 (9th Cir. 2012), respondent argues that not only does the new

8    claim concern trial and appellate counsels' failures, whereas the original claim concerned the

9    court's failures, the claims involve alleged violations of different constitutional amendments,

10   different aspects of the criminal process, and are based on different legal theories and analyses.

11   Therefore the core facts underlying the theory in the amended claim are different from the core

12   facts underlying the original claim.

13        Petitioner does not take issue with the <u>Schneider</u> decision because the claims sought to be

14   related back in that case did not arise from a common core of facts with the original claims.

15   Petitioner does, however, take issue with respondent's inference from that case, that an IAC claim

16   can never relate back to another type of claim, such as instructional error, because different actors

17   are involved or the timing of the errors may be different.  The <u>Schneider</u> court actually focused on

18   the facts that the claims had in common.  The court looked at relating back a claim concerning

19   trial counsel's failures to a claim concerning other failures by trial counsel, but these claims

20   shared no facts in common.  The original claim was based on trial counsel's failure to investigate

21   a co-defendant's defense while the amended claim alleged trial counsel's failure to prepare the

22   petitioner's defense.  The court did not premise its reasoning on the fact that one claim pertained

23   to one type of error and the other claim related to another type of error, but rather looked at the

24   facts that these claims had in common, which were non-existent.  In assessing whether a different

25   IAC claim related back to an original IAC claim that alleged appellate counsel failed to raise

26   certain issues on direct review and "additional grounds that will be found once an attorney is

27   appointed for petitioner," the court found that such language would "eviscerate <u>Mayle</u>" by

28   permitting relation back of any claim of IAC of appellate counsel that petitioner might later

17

1    decide to raise.  Id. at 1151.

2          Finally, in regard to relation back of ground 3 in the Schneider case, the situation on

3    which respondent appears to depend, the court found relation back inappropriate but not *solely*

4    because the original claim was based on trial counsel's alleged failures and the amended claim

5    was based on the trial court's alleged failures.  In fact, the court looked at the substance of those

6    claims.  The original claim was that trial counsel failed to investigate the co-defendant's strategy.

7    If he had done so, "he could have prevented the prejudice caused by [co-defendant's] defense by

8    filing a timely pre-trial motion to sever and to suppress Dehmer's testimony."  Id.  The amended

9    claim was that the trial court's denial of petitioner's motion to sever violated his due process and

10   caused his trial to be fundamentally unfair.  The court found that the only fact these two claims

11   had in common was that the co-defendant testified at petitioner's trial.  This fact was not

12   sufficient to show a common core of operative facts.

13         Here, the IAC claim is hinged directly on the court's instructional error as set forth in the

14   original petition.  Petitioner claims that both his trial and appellate counsel should have properly

15   litigated and appealed the instructional errors.  Therefore, these amended claims are based on the

16   same set of facts as the original claim.

17         Respondent also cites to Galaz v. Harrison, 2007 WL 951352 (E.D. Cal. Mar. 27, 2007),

18   for the proposition that new claims of ineffective assistance should not relate back to claims of

19   trial court error in its charge to the jury.  The court reasoned that "[n]either ineffectiveness of trial

20   or appellate counsel involves an analysis of whether the Court correctly instructed the jury or

21   whether the trial court's erroneous instructions or failure to instruct so infected the trial that a

22   petitioner's due process rights were violated."  Id. at 21.  The court found that ineffective

23   assistance, however, required an evaluation of counsel's performance throughout the pretrial and

24   trial process, under a different standard.  Id.  The one claim that that was most related to the

25   alleged trial court instructional error was that trial counsel failed to object to the prosecution's

26   characterization of CALJIC No. 2.06 during closing argument, an instruction that petitioner had

27   objected to the giving of by the trial court in the original petition.  Id. at 23.  The other IAC

28   claims did not relate factually to the original claims as the IAC claim does in this case.

1      Petitioner argues that <u>Galaz</u> is distinguishable because it concerned counsel's total failure

2 to object to a particular instruction, and here, the claimed ineffectiveness is failure to raise facts

3 and law to support a claim of instructional error that counsel *did* raise, but failed to flesh out.

4 Petitioner is correct in his argument that the core facts underlying both the IAC claim and the

5 instructional error claim are the same; the IAC claim is just another explanation of why petitioner

6 was further prejudiced by the court's failure to instruct the jury that petitioner's guilt was required

7 to be determined based on his own mens rea, not that of his co-defendant.  Unlike <u>Galaz</u>, where

8 the facts underlying the new claims were not the same as the facts underlying the original claims,

9 here the facts are the same.  The IAC claim is merely another legal theory used to argue how

10 petitioner's rights were additionally violated based on the same circumstances as the instructional

11 error.

12      Petitioner concedes that an additional fact is needed for the IAC claim: counsel's failure to

13 adequately object.  However, petitioner argues that this one single fact should not cause the IAC

14 claim to break with the instructional error claims as all the other facts that comprise the core of

15 operative facts underlying the claim remain the same.  Petitioner's citation to <u>Woodward v.</u>

16 <u>Williams</u>, 263 F.3d 1135, 1142 (10th Cir. 2001), illustrates this point.  Relation back was

17 permitted in that case where the claim in the original petition was a claim that the trial court

18 improperly admitted recanted statements, and the amended petition challenged the court's

19 preclusion of defendant's evidence that a statement had been recanted.  Petitioner also cites

20 <u>Mandacina v. United States</u>, 328 F.3d 995, 1000-1001 (8th Cir. 2003), where the amended

21 petition added an allegation to the original Brady error claim that the police department had failed

22 to disclose a particular report, where the original petition had alleged failure to disclose "any and

23 all" investigative information.  The court permitted relation back for this additional report.  These

24 cases are persuasive.

25      Respondent repeats arguments raised previously in regard to his opposition to petitioner's

26 motion to stay, relying on <u>Ireland v. Cash</u>, 2013 WL 310355 (E.D. Cal. Jan. 25, 2013).  This court

27 responded in its findings and recommendations addressing that argument, and stated:

28              Citing <u>Ireland v. Cash</u> , 2013 U.S. Dist. LEXIS (E.D. Cal. 2013),

> respondent effectively asserts that ineffective assistance claims will *never* relate back because they will *always* relate in part to the circumstances facing counsel when counsel did not prepare properly, or appellate counsel did not press the issue—timing apart from the determination by the court to give the contested instruction.  This is true in a technical sense, but for practical purposes in assessing counsel's performance regarding jury instructions, the proximate circumstances surrounding the giving of the instruction in the first place are the most important.  For trial counsel, knowing that trial is a dynamic and fluid event, and that the wisdom of a certain instruction cannot be truly assessed until the facts at trial have been presented, the most important time to assess counsel's performance coincides with the determination by the court to give the "errant" instruction after the close of evidence. Appellate counsel will also be referencing these same circumstances when assessing whether to raise the claim on appeal.

(ECF No. 44 at 8.)

Under the reasoning of Ireland and Galaz, relation back would never be allowed for IAC claims based on alleged erroneous jury instructions, no matter how related they are.  The practical reasoning of published binding precedent found in Nguyen v. Curry, 736 F.3d 1287 (9th Cir. 2013), relying in part on Martinez v. Ryan, ___ U.S. ___, 132 S.Ct. 1309 (2012), issued after Ireland and Galaz, is preferable, if not binding.  In Nguyen, an appellate counsel IAC claim was not raised in the initial petition at all.  Petitioner sought to relate it back to a double jeopardy claim that was raised but not exhausted in the original petition, and which respondent did not object to relating back, conceding it was related to the cruel and unusual punishment claim raised in the original petition.  In permitting relation back of the IAC claim, the court found that although this claim was not raised at the same time in the proceedings as the double jeopardy claim (on appeal as opposed to resentencing) and was based on a different type of relief (Sixth Amendment versus Fifth Amendment), the time and type requirement of Mayle was directed to the *facts* that support the claims, not to the claims or grounds themselves.  Nguyen, 736 F.3d at 1297.

The Nguyen court had cited Martinez v. Ryan, ___ U.S. ___, 132 S.Ct. 1309, 1318-1319 (2012), for its holding that ineffective assistance of trial counsel can provide the "cause" to excuse state court procedural default.[8]  Nguyen took the issue one step further and permitted

---

[8]  Petitioner claims that he has asserted an IAC claim out of an abundance of caution in order to

1    relation back to apply to claims of ineffective assistance of appellate counsel.

2            Based on Nguyen and other cases cited herein, the court finds that all of the claims in the

3    amended petition relate back to the original claim three as they are based on the same core of

4    operative facts, the trial court's instruction on the mens rea an aider and abettor must possess for

5    premeditated murder, and the facts ensuing from that instruction.[9]

6    CONCLUSION

7            Accordingly, IT IS HEREBY RECOMMENDED that:

8            1.  Respondent's motion to dismiss (ECF No. 56) be denied with the exception of the

9    judicial notice sub-claim of Claim 2; and

10           2.  Respondent be directed to file an answer to the amended petition (ECF No. 37) within

11               sixty days; and petitioner's reply, if any, shall be filed and served within thirty days after

12               service of the answer.

13           These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days

15   after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18

19   show cause and prejudice to any anticipated argument of procedural default for inadequately
     raising an objection to instructional error in the state court proceedings.  ECF No. 61 at 43.

20   [9]  Respondent argues that petitioner's claim that the court should have given instruction
     CALCRIM 373 and that appellate counsel should have informed the court of a recent decision

21   favorable to petitioner, People v. Nero, 181 Cal. App.4th 504, 514 (2010), are both claims that do
     not relate back.  Petitioner responds that these references are not facts but statements of the law

22   that existed at the time the original habeas petition was filed.  From reviewing these legal
     citations, it does appear that they would be legal support for arguments counsel should have made

23   if he had been effective.  Rather than supporting respondent's assertion that they pertain to an
     attorney's duty to properly investigate and work up a claim, they bolster an argument defense

24   counsel should have made in objecting to the "equally guilty" instruction.  In other words, the
     court in its findings and recommendations addressing petitioner's motion for stay and abeyance,

25   and in pointing out counsel's failure to cite Nero, opined, "petitioner has colorably, potentially
     demonstrated that counsel's performance fell below an objective standard of reasonableness and

26   there is a reasonable probability that but for the performance rendered the result of the proceeding
     would have been different."  ECF No. 44 at 6.  These citations are not claims in and of

27   themselves, and therefore no relation back analysis is necessary.

28

be served and filed within fourteen days after services of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 5, 2015

<u>/s/ Gregory G. Hollows</u>

UNITED STATES MAGISTRATE JUDGE

GGH:076/rodr2260.mtd